SAVANNAH BANK & TRUST COMPANY, Plaintiff, Appellant,

v.

GREAT AMERICAN INDEMNITY CO., Defendant, Appellee.

No. 5865.

United States Court of Appeals
First Circuit.

May 10, 1962.

since they are not parties to this litigation.

Walter L. Newsom, Jr., San Juan, P. R., with whom Enrique Cordova Diaz and Brown, Newsom & Cordova, San Juan, P. R., were on brief, for appellant.

C. A. Romero Barcelo, San Juan, P. R., with whom Rivera-Zayas, Rivera-Cestero & Rua, San Juan, P. R., was on brief, for appellee.

Before MAGRUDER,* ALDRICH and SMITH *, Circuit Judges.

SMITH, Circuit Judge.

The plaintiff-appellant filed a complaint in which it set forth two separate and independent claims: first, a claim against the Jerome Construction Co., Inc., (Jerome of Georgia) for the amounts allegedly due on three promissory notes; and second, a claim to a paramount lien on personal property seized under a writ of attachment in an action by the defendant-appellee against the Jerome Construction Co., Inc., (Jerome of Puerto Rico). Jerome of Georgia voluntarily appeared in the action and filed an answer in which it admitted liability on the note and consented to the entry of judgment. The judgment was entered but is not now before us for review.[1]

---

* Sitting by assignment.

1. We think it proper to observe that it appears from the record that in the action against Jerome of Georgia the diversity of citizenship, essential to the Court's jurisdiction, was lacking.

The defendant-appellee filed an answer in which it specifically denied the pertinent allegations of the complaint and disputed the validity and effect of the asserted liens. The issues thus raised were tried, and after trial a judgment in favor of the defendant-appellee was entered. The present appeal is from the said judgment and from the denial of a motion for a new trial.[2] A brief recital of facts and of the history of the litigation will place the questions raised in proper context.

On May 16, 1956, Jerome of Georgia, having obtained a "monthly repayment loan," executed and delivered to the plaintiff-appellant a promissory note in the principal amount of $9,350.40. The loan was secured by a "Bill of Sale to Secure Debt," (Plaintiff's Exhibit A-1) executed and delivered simultaneously with the execution and delivery of the promissory note. The bill of sale covered "5-Used International Trucks complete with Jaeger 3-½ yd. Cement Mixers," hereinafter identified as the automotive equipment.[3] The bill of sale was recorded in Georgia in conformity with its laws. Ga. Code Ann. § 67–1305. When this loan was negotiated there was exhibited and surrendered to the plaintiff-appellant an invoice from which it is evident that the automotive equipment had been sold to Jerome of Puerto Rico "for export."

An additional "monthly repayment loan" was negotiated on September 26, 1956, at which time Jerome of Georgia executed and delivered to the plaintiff-appellant a promissory note in the principal amount of $9,810.54. The loan was secured by a "Bill of Sale to Secure Debt," executed and delivered simultaneously with the execution and delivery of the promissory note. The bill of sale covered "1-Michigan ½ CY-Truck Mounted Crane," hereinafter described as the construction equipment.

It appears from the documentary evidence included in the original record, but not included in the Record Appendix, that Jerome of Georgia on November 14, 1957, executed and delivered to the plaintiff-appellant a "renewal note" in the amount of $25,000. This note was again renewed on December 24, 1957, at which time a new note in the said amount was executed and delivered. The latter note was secured not only by an additional "Bill of Sale to Secure Debt" but also by the earlier bills of sale. Neither this note nor the earlier notes, were ever fully paid.

The automotive and construction equipment described in the bills of sale was transported to Puerto Rico in 1956. (Plaintiff's Exhibit E-4, Answer to Interrogatory No. 5.)[4] The property remained in Puerto Rico and in the continuous possession of Jerome of Puerto Rico until May 6, 1958, when it was levied upon and seized under a writ of attachment issued in an action commenced by the Great American Indemnity Company, the defendant-appellee herein, against Jerome of Puerto Rico in the Superior Court of Puerto Rico. (Civil No. 58–2441). A judgment in favor of the Great American Indemnity Company was entered in the said action on October 20, 1958.

The complaint in the instant action was filed on September 17, 1958, and before the entry of final judgment in the action then pending in the Superior Court of Puerto Rico.[5] The plaintiff-appellant, relying solely on the bills of sale, supra, sought to enforce its liens as paramount to the lien of the judgment creditor, the defendant-appellee.

2. The motion for a new trial was joined with a motion for reconsideration, which was also denied.

3. Only three of the five described vehicles are involved in this litigation.

4. There is no evidence in the record as to the situs of the property at the time the bills of sale were executed and recorded.

5. Pursuant to the stipulation and agreement of the parties, the equipment was sold at private sale and the monies realized were deposited in the Superior Court of Puerto Rico pending the outcome of the instant action.

The District Court, after trial, held that the liens of the plaintiff-appellant were invalid against the defendant-appellee, and that the judgment lien of the latter was paramount. Thereafter a motion for a new trial and a motion for reconsideration were denied.

The trial court, making no distinction between the respective bills of sale and the effect of each as against the defendant-appellee, concluded generally that "[s]ince there was no evidence to demonstrate that Jerome Construction Company, Inc., had any title to or possession of the * * * property, plaintiff Savannah Bank of Georgia could not acquire any valid lien or title by virtue of the Bills of Sale." The questions here raised make it advisable for this Court to discuss separately the bills of sale and the relative priorities of the respective liens here asserted.

We observe at the outset that under the law of Georgia a "bill of sale to secure debt" is treated as an "equitable mortgage." Saunders v. Citizens First National Bank of Albany, 165 Ga. 558, 142 S.E. 127; Merchants & Mechanics Bank v. Beard, 162 Ga. 446, 134 S.E. 107. The bills of sale now before us will be so treated.

The test of mortgageability under Georgia law is the possession of the property, or a right to possession, in the mortgagor at the time the mortgage is executed. Ga.Code Ann. § 67–103; Thomas v. Hudson et al, 190 Ga. 622, 10 S.E.2d 396; Real Estate Bank & Trust Co. v. Baldwin Locomotive Works, 145 Ga. 831, 90 S.E. 49; Passieu v. Goodrich Co., 58 Ga.App. 691, 199 S.E. 775; Hogg v. Fuller, 17 Ga.App. 442, 87 S.E. 760. The actual and continuous possession of the equipment by Jerome of Puerto Rico raised a presumption as to its ownership and right to possession. 32 L.P.R.A. § 1887 (11 and 12). It was therefore incumbent upon the plaintiff-appellant to prove by competent evidence not only that it was the holder of duly recorded mortgages but also that the ownership of the property and the right to its possession was in Jerome of Georgia when the mortgages were executed and delivered.

### Construction Equipment

The plaintiff-appellant, aware of its burden of proof, offered in evidence a Bill of Sale (Plaintiff's Exhibit B-5), but without any proof as to its execution and authenticity. The defendant-appellee strenuously objected to the introduction of the document on the ground that there was no evidence as to its execution. The objection was overruled and the document was received and marked. The trial judge ruled that the bill of sale was admissible under the "Shop Book Rule." The ruling was erroneous. The writing was not one made by the plaintiff-appellant in the regular course of business within the meaning of the statute, 28 U.S.C.A. § 1732. Palmer v. Hoffman, 318 U.S. 109, 113, et seq., 63 S.Ct. 477, 87 L.Ed. 645 (1943); Standard Oil Co. of California v. Moore, 251 F.2d 188, 214, et seq. (9th Cir. 1957), cert. den. 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148 (1958).

The trial judge considered the bill of sale as though it were properly in evidence, but found that it was "insufficient to overcome the presumption of title" in Jerome of Puerto Rico. The finding was predicated solely on his determination that there was a complete lack of proof as to the execution and authenticity of the document. (See Memorandum, Record Appendix, pg. 19). The ultimate conclusion was tantamount to the exclusion of the evidence after submission of the case and while it was under advisement. Whether the action of the trial judge would warrant reversal of the judgment, we do not decide. Cf. Paine v. St. Paul Union Stockyards Co., 28 F.2d 463, 467 (8th Cir. 1928), modified on rehearing 35 F.2d 624 (1929). The ultimate decision of this Court rests on a ground other than that advanced by the trial judge.

The relative priorities of the mortgage lien and the attachment lien here in question must be determined un-

der the laws of Puerto Rico. We have found no authoritative decision by the highest court of Puerto Rico, and we therefore assume that the majority view would be followed. It is established by the great weight of authority that the validity of a chattel mortgage and the nature and extent of the rights acquired thereunder by the mortgages are determined by the law of the state where the chattel is At The Time When The Mortgage Is Executed. Restatement, Conflict of Laws, § 265; 10 Am.Jur., Chattel Mortgages, § 20; 11 Am.Jur., Conflict of Laws, § 74; Annot. 57 A.L.R. 708–710, 10 A.L.R.2d 767–770; see also the cases cited in A.L.R.2d Supp. Service (1960), at pages 944–950. The law of the place where the mortgage is executed is determinative of validity only if the property is located there at the time of execution. Ibid.

■ A chattel mortgage executed and recorded in one State is not valid and effective against an innocent third party in another State if at the time of the execution and recordation the property was in the latter State. The recordation of the mortgage under these circumstances cannot be regarded as constructive notice to the innocent third party.

■ It follows that the plaintiff-appellant would have been entitled to prevail on its claim to a paramount lien only upon proof by competent evidence that the situs of the property was in Georgia when the mortgage was executed and delivered. The record is devoid of any such evidence.[6] We are of the opinion that this absence of proof was fatal.

6. The only witness called frankly admitted that he had no knowledge as to the location of the property. The plaintiff-appellant offered in evidence the interrogatories propounded by the defendant-appellee (Plaintiff's Exhibit E–1) and the answers of Jerome of Georgia (Plaintiff's Exhibit E–4). The latter, in response to interrogatory 5, answered, "The property sought to be attached * * * was shipped out of Georgia and sent to Puerto Rico in 1956." The interroga-

## Automotive Equipment

The "Bill of Sale to Secure Debt," which covered the automotive equipment, treated as a mortgage, is clearly invalid. There is no evidence in the record that Jerome of Georgia had either possession or a right to possession of the automotive equipment when the mortgage was executed.[7] The only evidence offered by the plaintiff-appellant was the invoice, hereinabove referred to in the third paragraph, from which it appears that the ownership of the property and the right to its possession was in Jerome of Puerto Rico.

■ If the plaintiff-appellant had been able to establish by competent evidence that the ownership of the automotive equipment and the right to its possession were in Jerome of Georgia, the plaintiff could not have prevailed. It appears from the documentary evidence that the equipment was purchased for export on May 7, 1956, and that the mortgage was executed nine days later. There is no evidence in the record as to the location of the property when the mortgage was executed; however, even if the situs of the property were in Georgia, the recordation of the mortgage in conformity with the laws of Georgia, was not constructive notice, under the circumstances of this case, to an innocent third party in another State.

The invoice was sufficient to put the plaintiff-appellant on inquiry and, under the law of Georgia, it was chargeable with actual notice that the property was to be removed to a jurisdiction other than Georgia. Ga.Code Ann. § 37–116; Patellis v. Tanner, 197 Ga. 471, 29 S.E.2d 419.

tories and the answers thereto, although received in evidence, were properly limited in their evidential use in the cause against Jerome of Georgia. They were neither admissible nor evidential in the action against the defendant-appellee. In any event, the answer gave no information as to the date of shipment.

7. The interrogatories and the answers thereto were neither admissible nor evidential in the action against the defendant-appellee. (See note 6.)

**252**

It is established that under these circumstances the recordation of the mortgage, in conformity with the laws of Puerto Rico, was essential to the preservation of its lien. 11 Am.Jur., Conflict of Laws, § 78; Annot. 148 A.L.R. 382–387; Maguire v. Gorbaty Bros., 133 F.2d 675 (2d Cir., 1943); United Const. Co. v. Milam, 124 F.2d 670, 671 (6th Cir., 1942); Enterprise Optical Mfg. Co. v. Timmer, 71 F.2d 295, 296 (6th Cir., 1934); Meyer Herson Auto Sales Co. v. Faunkhauser, 62 App.D.C. 161, 65 F.2d 655 (1933). The situs given to the property by its removal governs the application of the recording statutes.

Judgment will be entered affirming the judgment of the district court in favor of defendant appellee Great American Indemnity Co.